IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. |
| TYSON RHAME, JAMES SHAW, FRANK BELL, and TERRENCE KELLER | 1:16-CR-00067-SCJ-CMS |

## <u>REPORT AND RECOMMENDATION</u>

This case is before the Court on the Motion to Dismiss First Superseding Indictment filed by three of the defendants in this case—Tyson Rhame, James Shaw, and Frank Bell (collectively "the Sterling Defendants")—and adopted by the fourth defendant, Terrence Keller.  (Docs. 220, 240).  In the motion, Defendants argue that Counts One through Thirty of the first superseding indictment should be dismissed for failure to allege an offense and that Count Seven should be dismissed based on statute of limitations grounds.  Also before the Court is Defendant Bell's Motion to Dismiss Counts Thirty-Five and Thirty-Six.  (Doc. 221).  For the reasons discussed below, and for the reasons stated in my prior Report and Recommendation on Defendants' motion to dismiss the original indictment (Doc. 167), I recommend that both motions to dismiss be denied.

## I.    LEGAL STANDARD

Defendants bring this motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), which allows a defendant to move for dismissal for "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  In ruling on such a motion, "a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes."  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in the original) (reversing a trial court's dismissal of an indictment charging the defendants with mail fraud and conspiracy to launder proceeds of mail fraud).  The Court is not permitted to review the sufficiency of the evidence that will be offered in support of an indictment's allegations, for "[t]here is no summary judgment procedure in criminal cases."  United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam); United States v. Salman, 378 F.3d 1266, 1267-68 (11th Cir. 2004) (making clear that a district court may not dismiss an indictment prior to trial on the ground of insufficient evidence); Sharpe, 438 F.3d at 1263 (stating that courts may not dismiss an indictment based on facts that should have been developed at trial).  "The sufficiency of a criminal indictment is determined from its face."  Critzer, 951 F.2d at 307 (reversing the dismissal of an indictment where the trial

court looked beyond the face of the indictment and considered facts proffered by the Government).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. Const. amend. VI.  The Federal Rules of Criminal Procedure require that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet."  Sharpe, 438 F.3d at 1263 (citations and quotations omitted).  The Eleventh Circuit has held that an indictment is sufficient "if it charges in the language of the statute" and apprises the defendant with reasonable certainty of the charged offense.  Sharpe, 438 F.3d at 1263; Critzer, 951 F.2d at 307.

## II.   ALLEGATIONS IN THE FIRST SUPERSEDING INDICTMENT

On February 10, 2016, a federal grand jury returned a 24-count indictment against the four defendants in this case.  (Doc. 1).  Defendants moved to dismiss that indictment (Docs. 81, 150), and following oral argument, I recommended that the motion to dismiss be denied.  (Doc. 167).  The district judge assigned to this

case has not issued a ruling on Defendant's motion to dismiss the original indictment.

On March 7, 2017, a federal grand jury returned a 36-count first superseding indictment against Defendants.  (Doc. 178, First Superseding Indictment ["FSI"]).  Like the original indictment, Count One of the first superseding indictment charges all Defendants with a conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.   Paragraph 1 of the first superseding indictment alleges:

> Beginning in or about 2010, and continuing to on or about June 3, 2015 . . . , [Defendants] . . . did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other and with others . . . to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by the omissions of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, caused the United States Postal Service and other interstate carriers to be used, and interstate wire communications to be made, in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

(FSI ¶ 1).

The first superseding indictment states that the Sterling Defendants were each associated with a company known as the Sterling Currency Group, LLC ("Sterling"), which was in the business of selling and exchanging so-called "exotic

currencies," including the Iraqi dinar.  (FSI ¶ 2).  Defendants Rhame and Shaw were co-owners of Sterling, and Defendant Bell was Sterling's Chief Operating Officer.  (FSI ¶ 3).  The first superseding indictment alleges that Defendant Keller was the leader of a group of individuals known as "the GET Team," and that Defendant Keller ran a website, an internet chat forum, and weekly conference calls in which information was disseminated concerning the potential investment value of the Iraqi dinar.  (FSI ¶ 5).

The first superseding indictment further avers that between 2010 and June 2015, Sterling was one of the largest sellers and currency exchangers of the dinar in the United States.  (FSI ¶ 6).  During that time, there was speculation in the United States that there might be an imminent revaluation of the Iraqi dinar that could mean a sudden, exponential rise in the value of the dinar as compared to the U.S. dollar, resulting in enormous gains for people who owned the dinar at the time of the revaluation.  (Id.).

The Government alleges that Defendant Rhame, with the knowledge and consent of Defendant Shaw, "falsely told customers that Sterling would open secure Iraqi dinar exchanges at airports throughout the United States and Canada within a matter of hours or days of a revaluation."  (FSI ¶ 7).  The purpose of this (allegedly false) statement was to bolster other (allegedly false) statements that a

dinar revaluation, in fact, was imminent.  (Id.).  According to the first superseding indictment, Sterling did not have the capacity or infrastructure to open these exchanges, and the three Sterling Defendants never personally believed that they would have to set them up.  (FSI ¶ 8).

According to the first superseding indictment, Defendant Keller, through the GET Team, falsely claimed to have information regarding an "imminent" revaluation from, among others, "high-level confidential sources" in the U.S. and Iraqi governments.  (FSI ¶ 9).  It is further alleged that all Defendants knew and believed that representations concerning an imminent revaluation of the Iraqi dinar, particularly claims that the information came from one or more supposed high-level confidential sources, would boost sales for Sterling.  (Id.).  Defendant Keller allegedly induced his followers to believe his claims about the imminent revaluation by making material misrepresentations and by making omissions of material facts.  (FSI ¶ 10).

The first superseding indictment alleges further that Defendant Keller had "a secret arrangement" with the Sterling Defendants to "pump" the Iraqi dinar through the GET Team, and that the four Defendants "consistently" led customers to believe that no such arrangement existed and took steps to conceal the arrangement.  (FSI ¶¶ 9, 11, 14).  Defendant Keller claimed that he had no

financial or other ulterior motive for promoting the dinar as an investment, and that any advertising money he made merely covered the cost of running the GET Team. (FSI ¶ 11). Defendant Keller repeatedly claimed that he was simply disseminating his knowledge and information for the benefit of others. (FSI ¶¶ 11, 15). For their part, the Sterling Defendants publically maintained that Sterling merely had advertising banners with promoters. (FSI ¶ 11).

According to the first superseding indictment, Sterling paid Keller more than $160,000.00, which was well in excess of the cost required to maintain the GET Team website, and Defendant Keller used nearly all of that money for his personal benefit. (FSI ¶ 12). Defendants allegedly downplayed the financial relationship between Sterling and Defendant Keller and other promoters to make it appear that Defendant Keller was not being paid to pump the dinar and to make the revaluation theory more credible to investors. (FSI ¶¶ 12-15). The first superseding indictment alleges that the Sterling Defendants knew that Sterling's payments to promoters would cause the promoters "to spread false and misleading information about the dinar and to direct business to Sterling." (FSI ¶ 14).

The first superseding indictment states that at various times, Defendants Rhame and Bell (and other Sterling representatives) participated in conference calls and internet chat sessions in which Defendant Keller made representations to

7

listeners concerning (1) the "imminent" revaluation; (2) his access to "high-level confidential sources"; and (3) the fact that "he was just trying to be helpful and received no financial benefit for providing this information to others." (FSI ¶ 15). The Government alleges that the participation of Defendants Rhame and Bell (and other Sterling representatives) in these calls and internet forums "provided further validation to followers" that a revaluation was imminent. (Id.).

The first superseding indictment alleges that the Sterling Defendants knew and believed that Sterling's secret pumping arrangement with Defendant Keller (and other dinar promoters) were essential to Sterling's financial success. (FSI ¶ 16).

The first superseding indictment recognizes that the Sterling Defendants made no direct representations about the likelihood of a revaluation, and they instructed Sterling employees not to give investment advice. (FSI ¶¶ 14, 15). However, Defendants Rhame, Bell, and other Sterling representatives allegedly assured GET Team followers that Sterling was prepared to handle the high volume of Iraqi dinar exchanges that many investors expected would occur immediately after the revaluation. (FSI ¶ 15).

In Counts Two through Six, incorporating by reference the factual allegations in Count One, the first superseding indictment alleges that all

Defendants committed mail fraud on five separate occasions between August 22, 2011 and October 8, 2014.  (FSI ¶¶ 17-19).  In Counts Seven through Seventeen, incorporating by reference the factual allegations in Count One, the first superseding indictment alleges that all Defendants committed wire fraud on eleven separate occasions between July 8, 2011 and May 14, 2015.  (FSI ¶¶ 20-22).  In Count Eighteen, incorporating by reference the factual allegations in Count One, the first superseding indictment alleges that the three Sterling Defendants engaged in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h), by conspiring "to knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from" mail fraud and wire fraud.  (FSI ¶¶ 23-24).  In Counts Nineteen through Thirty, incorporating by reference the factual allegations in Count One, the first superseding indictment alleges that Defendants Rhame and Shaw "aided and abetted by each other and others known and unknown to the Grand Jury," committed twelve acts of money laundering between January 24, 2011 and January 26, 2015.  (FSI ¶¶ 25-26).  Finally, the first superseding indictment alleges four counts of false statements against Defendant Rhame (Counts Thirty-One through Thirty-Four) and two counts of false statements

against Defendant Bell (Counts Thirty-Five and Thirty-Six).   (FSI ¶¶ 27-38). Specifically, Defendant Rhame is alleged to have falsely told FBI agents that he and Sterling had never advertised the Iraqi dinar as a good investment (Count Thirty-One); that he and Sterling had never promoted or talked about a potential Iraqi dinar revaluation (Count Thirty-Two); that he and Sterling had never paid commissions to third parties to promote Iraqi dinar sales (Count Thirty-Three); and that he and Sterling had never incentivized other blogs or websites to promote Sterling's dinar sales (Count Thirty-Four).   (FSI ¶¶ 27-34).   Defendant Bell is alleged to have falsely told FBI agents that he affirmatively told the promoters not to drive business to Sterling's website (Count Thirty-Five); and that a week later, Defendant Bell told the FBI that he had told Defendant Keller not to promote Sterling (Count Thirty-Six).   (FSI ¶¶ 35-38).   The first superseding indictment concludes with a forfeiture provision against all Defendants.

## III.   DISCUSSION

Through their motion to dismiss, Defendants argue that the conspiracy charge alleged in Count One and the fraud charges alleged in Counts Two through Seventeen fail for a number of reasons.   Defendants contend that if the Court agrees with them on these Counts, then the money laundering charges alleged in Counts Eighteen through Thirty also must be dismissed because these counts rely

10

on the criminality of the conduct charged in Counts One through Seventeen.  (Doc. 220 at 7-23).

Next Defendants argue that Court Seven must be dismissed because it is outside of the statute of limitations.  (Doc. 220 at 23-34).

Finally, Defendant Bell moves to dismiss the two false statement counts against him—Count Thirty-Five (because the statement was not literally false) and Count Thirty-Six (because the charge is multiplicitous).  (Doc. 221).

**A. Counts One through Thirty**

At this stage in these proceedings, the Court's role is limited to determining whether the first superseding indictment is legally sufficient.  A legally sufficient indictment must do three things: (1) present the essential elements of the charged offense; (2) notify the accused of the charges against him; and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.  See United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009).  "In determining whether an indictment is sufficient, we read it as a whole and give it a common sense construction."  Id. (citations and quotation marks omitted).

As with their previously filed motion to dismiss the original indictment, Defendants do not assert that the first superseding indictment lacks sufficient detail

11

to apprise them of the charges or to defend against double jeopardy. Moreover, although they contend that the first superseding indictment fails to allege a crime (because what they were doing was legal), they do not contend that essential elements of the charged crimes are missing from the language of the first superseding indictment.

Rather, Defendants make various arguments about why the Government's case against them fails as a matter of substantive law. Defendants argue that: (1) the first superseding indictment fails to allege a criminal conspiracy between the Sterling Defendants and Defendant Keller because all Sterling did was purchase advertising for Sterling's legal product (Doc. 220 at 7-11); (2) the first superseding indictment does not allege fraud because the alleged victims got exactly what they paid for, at the proper price (id. at 11-20); and (3) the allegedly false statements described in the first superseding are not material (id. at 20-23). These arguments are nearly identical to arguments that Defendants have already made and that I have already rejected, and there is nothing in the first superseding indictment that changes the analysis. As explained below, it is evident that the first superseding indictment is legally sufficient "on its face." See Sharpe, 438 F.3d at 1263.

Count One alleges a conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349. "A 'conspiracy' is an agreement by two or more

persons to commit an unlawful act." Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 2016, Offense Instruction 54 (Conspiracy to Commit [Mail] Fraud). The crime of conspiracy has three elements: (1) an agreement between two or more persons to achieve an unlawful objective; (2) the knowing and voluntary participation in that agreement by the defendant; and (3) an overt act in furtherance of the agreement. See United States v. Broughton, 689 F.3d 1260, 1277 (11th Cir. 2012). In this case, the Government alleges that the unlawful objective of the conspiracy was mail fraud and wire fraud. For those crimes, the Government must prove that the defendant: (1) voluntarily and intentionally devised a scheme to defraud or obtain money or property based on materially false representations or promises; (2) did so with the intent to defraud; and (3) used, or caused to be used, the U.S. Mail (for mail fraud) or an interstate wire communication (for wire fraud) in furtherance of, or in an attempt to carry out, some essential step in the scheme. See 18 U.S.C. § 1341; 18 U.S.C. § 1343; see also Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 2016, Offense Instructions 50.1 and 51 (Mail Fraud and Wire Fraud).

Paragraph 1 of the first superseding indictment alleges a conspiracy and tracks the statutory language of the mail fraud and wire fraud statutes. (FSI ¶1). Where, as here, an indictment tracks the language of the criminal statute, the

indictment must also include enough facts to inform the defendant of the specific offense that the Government is charging.  See United States v. Bobo, 344 F.3d 1076, 1083-84 (11th Cir. 2003) ("An indictment that requires speculation on a fundamental part of the charge is insufficient.").  It is not necessary, however, for an indictment to allege in detail the factual proof that the Government intends to rely upon to support the charges.  See United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).

Paragraphs 2 through 16 of the first superseding indictment provide the factual basis for the conspiracy charge.  The first superseding indictment describes the object of the scheme (to defraud investors by touting the dinar as a potentially lucrative investment opportunity in order to boost Sterling's dinar sales).  (FSI ¶¶ 4, 6-16).  It sets forth the manner of executing the scheme (by making false statements and omissions of material facts on the internet and during conference calls regarding whether a dinar revaluation was "imminent").  (Id. at ¶¶ 7, 8, 12).  It alleges a series of acts to effect the object of the scheme (by making false claims about an imminent revaluation, by claiming to have high-level sources who said that a revaluation was imminent, by concealing Defendant Keller's financial incentives and Sterling's payments to Defendant Keller, and by making assurances to listeners on the GET Team's conference calls and chat sessions that Sterling was

14

prepared to handle the high volume of dinar exchanges that Sterling supposedly expected after the "imminent" revaluation).   (Id. at ¶¶ 6-16).   Finally, the first superseding indictment alleges the relation of the scheme to interstate commerce (alleging that the money orders and checks were handled by the Postal Service or other interstate carriers and that the wire communications were transmitted in interstate commerce).  (Id. at ¶ 1).

It is evident from the face of the first superseding indictment that the first superseding indictment alleges a conspiracy and states all of the elements of the underlying fraud charges.  The first superseding indictment also provides enough facts and circumstances to inform Defendants of the specific conspiracy and the specific acts of fraud with which they are charged.   Nevertheless, Defendants contend that the conspiracy count, and the other counts that share an alleged factual basis with the conspiracy count, should all be dismissed because they fail to allege a crime.

Because I have previously addressed these arguments, I will not restate my analysis here.   For the reasons set forth on pages 13-15 of my Report and Recommendation issued on January 31, 2017 (Doc. 167), I find Defendants' argument that all Sterling did was pay for advertising for a legal product unpersuasive.   For the reasons set forth on pages 20-23 of that Report and

Recommendation, I reject Defendants' argument that the first superseding indictment does not allege fraud because the alleged victims got exactly what they paid for, at the proper price. Finally, I conclude that Defendants' materiality argument fails for the reasons stated on pages 15 to 18 of my prior Report and Recommendation.

The first superseding indictment in this case meets the basic pleading requirements as established by the Federal Rules of Criminal Procedure and Eleventh Circuit case law. See Jordan, 582 F.3d at 1245. The first superseding indictment tracks the language of the relevant statues, and it includes sufficient detail to place Defendants on notice of the allegations against them and to defend against double jeopardy. This is all that the law requires. Accordingly, I **RECOMMEND** that the motion to dismiss Counts One through Thirty for failure to allege an offense be **DENIED**.

### B. Count Seven (statute of limitations)

Defendants next argue that Count Seven should be dismissed because it alleges a crime (wire fraud) that occurred on July 8, 2011, which is more than five years before March 7, 2017, the date the first superseding indictment was filed. (Doc. 220 at 23-24). The Government concedes that wire fraud has a five-year

statute of limitations but argues that Count Seven relates back to Count Nine in the original indictment. (Doc. 226 at 21-23).

Count Seven of the first superseding indictment alleges that all Defendants violated the wire fraud statute by causing "L.P." to wire $2,402 to Sterling "on or about" July 8, 2011. (FSI ¶ 22). Count Nine of the original indictment (which was filed within the statute of limitations) alleged that Defendants violated the wire fraud statute by causing "L.P." to wire $2,402 to Sterling "on or about" August 11, 2011. (Doc. 1, ¶ 20). Thus, the sole difference (aside from the manner and means language) between both charges is the "on or about" date, which was moved forward by 34 days in the first superseding indictment.

The filing of a timely indictment tolls the statute of limitations for purposes of a superseding indictment so long as the superseding indictment does not "broaden or substantially amend the original charge. See United States v. Italiano, 894 F.2d 1280, 1282 (11th Cir. 1990). Minor factual differences between an original indictment and a superseding indictment do not substantially amend the original charges. Id. Here, I agree with the Government that changing the "on or about" date by 34 days is the type of minor factual difference that the Eleventh Circuit permits the Government to make without running afoul of the applicable

statute of limitations.  Accordingly, I **RECOMMEND** that the motion to dismiss Count Seven on statute of limitations grounds be **DENIED**.

### C. Counts Thirty-Five and Thirty-Six

Finally, Defendant Bell argues that the two false statement charges against him alleged in Counts Thirty-Five and Thirty-Six should be dismissed.  He argues that Count Thirty-Five fails to allege an offense and that Count Thirty-Six is multiplicitous.  (Doc. 221).

### i.  *Whether Count Thirty-Five Alleges an Offense*

Count Thirty-Five alleges that Defendant Bell made a false statement to FBI agents when he stated that Sterling maintained a firewall with "Iraqi dinar promoters" and that he affirmatively told "the promoters" not to drive business to Sterling's website.  (FSI ¶ 36).  According to the first superseding indictment, this statement was false because Defendant Bell had not, in fact, told Defendant Keller to stop driving business to the Sterling website.  (Id.).

An essential element of a Section 1001 false statement offense is that the statement be false.  Defendant Bell argues that Count Thirty-Five does not allege a Section 1001 offense because there is a disconnect between the statements Defendant Bell allegedly made to FBI agents and the Government's "truth statement."  Defendant Bell argues that the only way the Government can prove

that his statements about "promoters" are literally false is by proving that Defendant Bell told **all** promoters to strop driving business to Sterling's website. Defendant Bell argues that because the Government did not make such allegations, the Government has failed to sufficiently allege that he made a false statement. (Doc. 221 at 7-8).   According to Defendant Bell, the Government's purported "truth statement" and Defendant Bell's alleged false statements could both be true simultaneously; if it were true that Sterling told even one promoter (other than Keller) to stop driving business to Sterling's website, his statements to the FBI could not be said to be literally false.  (Doc. 221 at 9-10).

The Government responds, and I agree, that Defendant Bell may argue at trial that he gave the "literal truth" to the FBI agent's questions, but it is evident that the first superseding indictment has sufficiently alleged that he committed a Section 1001 violation.   The fight about the nuances of Defendant Bell's statements will have to play out during the trial.

ii.   *Whether Count Thirty-Six is Multiplicitous*[1]

Count Thirty-Six alleges that Defendant Bell made a false statement to the FBI on June 3, 2015 when he stated to an FBI agent that he had told Defendant Keller "not to promote sterling."  (FSI ¶ 38).  Defendant Bell argues that Count Thirty-Six of the first superseding indictment should be dismissed as multiplicitous because it improperly charges Bell with the same offense charged in Count Thirty-Five.  I find Defendant Bell's arguments without merit because the statements are not identical, and they were made on different days.  To the extent Defendant Bell argues that the second statement is not material, the issue of whether the statement hindered or impaired the FBI agent's governmental function is an issue for the jury, not for the Court on a motion to dismiss.

For these reasons, I **RECOMMEND** that Defendant Bell's motion to dismiss Counts Thirty-Five and Thirty-Six be **DENIED**.

---

[1]   Defendant Bell also argues that Count Thirty-Six fails to state a claim because the false statement alleged in this count occurred on the last day of the alleged conspiracy and cannot, as a matter of law, be considered material.  (Doc. 221 at 10-11).  I find no basis to support Defendant Bell's contention that just because the false statement occurred at the end of the conspiracy, there is no way that the statement could have influenced the functioning of a governmental agency. Whether the false statement was material must be resolved by the jury.

## IV.   CONCLUSION

For the reasons stated, I **RECOMMEND** that the two pending motions to dismiss (Docs. 220, 221, 240) be **DENIED**.

In addition, it appears that there are no further outstanding pretrial or discovery matters for me to address.  Accordingly, this case is **CERTIFIED** as ready for trial.

**IT IS SO ORDERED** this 29th day of September 2017.

Catherine M. Salinas
United States Magistrate Judge