**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**UNITED STATES OF AMERICA**

   **v.**

**TYSON RHAME, JAMES SHAW, and**
**FRANK BELL,**

   **Defendants.**

**CRIMINAL CASE NO.**
**1:16-CR-00067-SCJ**

**ORDER**

    This matter appears before the Court on the pending Motions for

Judgment of Acquittal filed by Defendant Tyson Rhame (Doc. Nos. [488], [1]

[558]), Defendant James Shaw (Doc. Nos. [487], [2] [564] [3]), and Defendant Frank

---

[1] The motion (at Doc. No. [488]) was filed by Defendant Rhame during trial, at the conclusion of the Government's case.

[2] The motion (at Doc. No. [487]) was filed by Defendant Shaw during trial, at the conclusion of the Government's case.

[3] The Court recognizes that there is a supplemental brief filed collectively by Defendants (Doc. No. [610]) that concerns the <u>Brady</u> issue. The Court will address the supplemental brief and related motions in a separate order.

Bell (Doc. Nos. [489],[4] [566]).[5] The Government filed consolidated responses. Doc. Nos. [490], [580].  Defendants thereafter filed reply briefs.  Doc. Nos. [589], [595], [598].  Defendant Bell subsequently filed a Notice of Immateriality of the Alleged False Statements in regard to Counts 35 and 36 of the Indictment. Doc. No. [615]. Defendants also filed a Notice of Supplemental Authority. Doc. No. [614].

During the trial phase of the case, the Court held oral argument on September 27, 2018.  Doc. No. [541].  The Court ruled on certain portions of the motions at trial and took other portions of the motion under advisement.[6] The Court later noted its right to reserve ruling as to Counts 18, 19, and 21 of the Superseding Indictment.  Doc. No. [542], T. p. 3952.[7]

---

[4] The motion (at Doc. No. [489]) was filed by Defendant Bell during trial, at the conclusion of the Government's case.

[5] Defendants have filed motions to adopt the other's motions (Doc. Nos. [489], [568], [569]).  Said adoption motions are **GRANTED**.  The Court also indicated that it considered the motions adopted, at trial.  See Doc. No. [541-1], p. 60, lines 1–2.

[6] The Court will perfect the record as to its trial rulings at the conclusion of this Order.

[7] The First Superseding Criminal Indictment upon which the Government proceeded to trial is at Doc. No. [178].  A redacted indictment (to reflect the counts that were dismissed by the Government (see Doc. No. [500])) for the jury's use during deliberations is at Doc. No. [511].  The verdict forms are at Doc. Nos. [516], [517], and [518].

The trial of this case lasted from September 4, 2018 to October 9, 2018. Doc. Nos. [459], [515].  During which, there was testimony from a number of witnesses and hundreds of exhibits admitted into evidence.

On October 9, 2018, a jury convicted the above-named defendants of one count of conspiracy to commit wire and mail fraud (Count 1), two counts of mail fraud (Counts 3 and 4), and four counts of wire fraud (Counts 11, 14, 15, and 16) concerning a scheme to defraud Iraqi dinar investors.  Doc. Nos. [516], [518], and [519].  Defendant Rhame was also convicted of four counts of making false statements to an FBI agent (Counts 31, 32, 33, 34).  Defendant Bell was convicted of two counts of making false statements to an FBI agent (Counts 35, 36).  Id.  The jury acquitted the three defendants of money laundering charges (Count 18, 19, 21).   Id.  A fourth co-defendant, Terrence Keller, was acquitted of all charges for which he was named in the Superseding Indictment.  Doc. No. [517].

After the jury's verdict, Defendants Rhame, Shaw, and Bell filed post-trial motions for judgments of acquittal and the Court held post-trial oral argument on April 15, 2019.  Doc. No. [623].  The Court took all of the pending

motions under advisement post-trial in the renewed motion context. Doc. No.

[620]. The pending motions are now ripe for review.

The pending motions were made pursuant to Federal Rule of Criminal

Procedure 29, which provides in relevant part:

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.
> . . . .
> (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion . . . after it returns a verdict of guilty . . . . If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.
> (c) After Jury Verdict or Discharge.
> (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.
> (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.
> (3) No Prior Motion Required. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

4

Fed. R. Crim. P. 29(a) — (c).

In evaluating the sufficiency of the evidence, the Court is "'bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant.'" United States v. Hernandez, 433 F.3d 1328, 1334 (11th Cir. 2005) (citations and alterations omitted).[8] "The evidence does not have to 'exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.'" Id. at 1335. "'Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id.; see also United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987). To this regard, "[i]n rebutting the Government's evidence, '[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could not have

---

[8] Stated another way, the Eleventh Circuit has held that "[a]ll credibility choices must be made in support of the jury's verdict," in the motion for judgment of acquittal context. United States v. Greer, 850 F.2d 1447, 1450 (11th Cir. 1988).

found guilt beyond a reasonable doubt.'"  <u>United States v. Maxwell</u>, 579 F.3d 1282, 1299 (11th Cir. 2009).

The Eleventh Circuit has held that it "will not overturn a jury's verdict if there is 'any reasonable construction of the evidence [that] would have allowed the jury to find the defendant guilty beyond a reasonable doubt.'"  <u>United States v. Martin</u>, 803 F.3d 581, 587 (11th Cir. 2015) (citations omitted).  "'The test for sufficiency of the evidence is identical [,] regardless of whether the evidence is direct or circumstantial,' but if the government relied on circumstantial evidence, 'reasonable inferences, not mere speculation, must support the conviction." <u>Id.</u> (citations omitted).

### A.  <u>Sufficiency of the Evidence</u>

#### 1. *Conspiracy and substantive mail/wire fraud charges*

In their motions, all Defendants essentially argue that there was insufficient evidence in the record to support a finding beyond a reasonable doubt for the conspiracy, mail fraud, and wire fraud counts/convictions (Counts 1, 3, 4, 11, 14, 15, and 16 of the Superseding Indictment).

"The elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud,[9] and, (2) the use of the interstate mails or wires in furtherance of that scheme. To sustain the related conspiracy convictions the Government was required to prove that [each Defendant] knew of and willfully joined in the unlawful scheme to defraud; circumstantial evidence can supply proof of knowledge of the scheme." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009) (citations omitted). "'[T]he [G]overnment need not prove that the defendant knew all of the details or participated in every aspect of the conspiracy.' Instead, the government's burden is only to prove that the defendant knew of 'the essential nature of the conspiracy.'" United States v. Moran, 778 F.3d 942, 960 (11th Cir. 2015) (citations omitted). "As for the

---

[9] "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. A misrepresentation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed.'" Maxwell, 579 F.3d at 1299 (citations omitted). "[U]nder the mail fraud statute, it is just as unlawful to speak "half[-]truths" or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading. The statements need not be false or fraudulent on their face, and the accused need not misrepresent any fact, since all that is necessary is that the scheme be reasonably calculated to deceive persons of ordinary prudence and comprehension, and that the mail service of the United States be used in the execution of the scheme." United States v. Townley, 665 F.2d 579, 585 (5th Cir. 1982).

voluntary joining element, the government can meet this burden through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." Id. at 961 (internal quotations and citations omitted).

In the case *sub judice*, the evidence, viewed in a light most favorable to the Government, reveals that the Government introduced sufficient evidence to uphold each conviction as to each of the three Defendants as a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.  More specifically, the evidence sufficiently established that Defendants knew of and voluntary joined a wire and mail fraud conspiracy and actively participated in wire and mail fraud by, as stated by the Government,[10] engaging in a "sophisticated scheme to defraud Iraqi dinar investors [of Sterling],[11] who were led to believe they would make untold millions after a massive revaluation."  Doc. No. [580], p. 12.

---

[10] The Court adopts by reference the Government's recitation of the facts in its brief at Doc. No. [580], which the Court deems correct.

[11] As stated in the Superseding Indictment and established at trial, Sterling Currency Group, LLC ("Sterling") was a Georgia corporation that sold and exchanged "exotic currencies," including the Iraqi dinar.  Doc. No. [178], p. 2, ¶ 2.  Throughout this case, Defendants Rhame, Shaw, and Bell are collectively referred to as "the Sterling

The evidence also sufficiently established (under the above-stated standard) Defendant Rhame as being in large part the architect of the fraud scheme and being "involved in nearly every aspect of the fraudulent conduct," such as creating an article with false information about the imminent revaluation, falsely claiming that Sterling had plans to appear at numerous airports following a revaluation, causing promoters to spread false and misleading information about the Iraqi dinar, mocking his victims for falling for his false statements about the airport exchange, lying to FBI agents, and making a profit, showing his motive to commit the charged offenses.  Doc. No. [580], p. 27.

The evidence also sufficiently established (under the above-stated standard) that Defendant Shaw was a willing member of the conspiracy and scheme to defraud, through his email correspondence, the testimony of his brother, and making a profit.

The evidence also sufficiently established (under the above-stated standard) that Defendant Bell joined the conspiracy, after he was hired to work

_____

Defendants."

at Sterling, by appearing on the GET Team[12]conference calls falsely telling GET Team listeners that Sterling had plans to appear at airports all over the country, post-revaluation, even though he never believed in the revaluation and considered it to be "mythology," coordinating a secret pumping relationship with co-defendant, Keller, lying to the FBI, and making a profit.

The Court recognizes the Defendants' numerous arguments in favor of their innocence; however, "[t]he problem with [these] argument[s] is that the jury was free to disregard the testimony (as it obviously did) and, instead, to credit the contrary evidence presented by the Government's witnesses." United States v. Maxwell, 579 F.3d 1282, 1301 (11th Cir. 2009).

### a. *Takhalov*

Defendant Rhame also argues that the evidence is insufficient as a matter of law under the Eleventh Circuit's holding in United States v. Takhalov, 827 F.3d 1307 (11th Cir. 2016), because "customers received the benefit of the

---

[12] As stated in the Superseding Indictment and established at trial, the "GET Team" was a trade name for a group of individuals, led by Terrence Keller, who ran a website, an internet chat forum, and weekly conference calls in which information was disseminated to participants concerning the potential investment value of the Iraqi dinar.  Doc. No. [178], p. 3, ¶ 5.

bargain — either hard currency outright or the right to buy hard currency at a specified price once they paid the balance of a layaway order."  Doc. No. [558-1], p. 14; Doc. Nos. [564], p. 6, n.1.[13]

However, the Government argues, and this Court agrees, that there is evidence that the Sterling customers were being defrauded because they did not have the ability to exchange the dinar (that they bought at a mark-up) from Sterling, like they thought that they were going to be able to do at airport exchanges.  Doc. No. [623], p. 165, lines 7–18.  Essentially, the Government argues that the victims did not get the suite of services that were supposed to accompany the dinar.  Id. at p. 166, lines 1–7.  The Government also argues that monetary loss is not an absolute requirement of wire fraud and in support of its argument, cites the case of United States v. Chan, 729 F. App'x 765, 769 (11th Cir. 2018) ("Relying on United States v. Takhalov, 827 F.3d 1307 (11th Cir. 2016), [the defendant] argues that he did not defraud his customers because they 'got

---

[13] In a reply brief, Defendant Shaw argues that "the Takhalov instruction was critically important to the defense to explain why the airport exchange policy may have been deceptive, but it was not fraudulent."  Doc. No. [589], p. 17.  Defendant Shaw also raised arguments concerning improper evidence admitted at trial.  Doc. No. [589], p. 18.  The Court will address the propriety of the Takhalov instruction and the Court's admissibility rulings in the context of its separate order on the pending motions for new trial.

exactly what they paid for' and as a result his statements did not mislead them about the 'nature of the bargain.' But his customers did not get 'exactly what they paid for' because they paid for supplements that were legal to sell and safe to consume."). After review, the Court upholds the Government's argument and citation of authority.

In rebuttal, Defendants assert *inter alia* that the Government's argument is a changed theory of prosecution. Doc. No. [623], p. 188, lines 1–8. However, the Court does not agree, as the customers remain the victims of the conspiracy and the Government's argument merely provides a rebuttal to Defendants' <u>Takhalov</u> argument.

### b. <u>Bell's joining of the conspiracy</u>

Defendant Bell asserts that "[t]here is no evidence of an express or implied agreement among any combination of defendants to engage in mail or wire fraud by keeping the advertising relationship between Sterling and the GET Team secret or that Mr. Bell joined a conspiracy to spread lies about the dinar." Doc. No. [566-1], p. 18. Defendant Bell also states that he "simply continued the status quo—advertising—he did not knowingly join an illegal scheme." <u>Id.</u> at p. 21.

After review, the Court is unable to uphold Defendant Bell's arguments, as a review of the evidence shows and as correctly set forth in the Government's brief (at Doc. No. [580]) that Defendant Bell did more than just continue the status quo.  In this case, Defendant Bell knew that the payments to Keller were causing Keller to spread information that Bell knew to be false to prospective investors.  Doc. No. [580], p. 22.  Also, "in recorded statements to the FBI on May 28, 2015, and June 3, 2015, Bell unequivocally stated that he considered the [reevaluation, "RV"] theory to be 'mythology' and that he did not believe the revaluation was at all likely."  Id. at p. 18.  The Court also agrees with the Government that "ample evidence" authorized the jury to disagree with Defendants' strategy of claiming that Sterling's (and Bell's) relationship with Keller was "innocuous," "legal advertising."  Id. at p. 26.

The Court is also unable to uphold Defendant Bell's arguments concerning the absence of evidence as to an express or implied agreement to engage in mail or wire fraud, as binding authority holds that "it is unnecessary for a conspiracy to be bottomed on an express or formal agreement. Oral statements of agreement are equally unnecessary. It is enough if a conspiracy to commit a crime can be inferred from the circumstances present in a given

case." United States v. Ryan, 478 F.2d 1008, 1015 (5th Cir. 1973);[14] see also

United States v. Parker, 839 F.2d 1473, 1478 (11th Cir. 1988) ("The record is void

of any expressed agreement between appellants to defraud . . . customers.

Conspiracy to defraud, however, 'may be inferred from the actions of the actors

or by the circumstantial evidence of a scheme.'").  Here, the evidence was

sufficient (under the above-stated standard) for the jury to infer from the

circumstances a conspiracy to commit the crimes of mail and wire fraud on the

part of each of the three Sterling Defendants.

### c. Acquittal of Keller

Defendant Bell asserts that as to Count 1 and the acquittal of co-

defendant Keller:  "[w]ithout Mr. Keller's involvement [as the jury acquitted

him], there can be no overall, single agreement to defraud as it relates to

[Defendant] Bell."  Doc. No. [566-1], p. 22.

In its response brief, the Government cited the case of United States v.

Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) for the Eleventh Circuit's binding

---

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered prior to the close of business on September 30, 1981 by the United States Court of Appeals for the Fifth Circuit.

authority and statement of law that "[c]onsistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."

In light of this authority, the Court is unable to uphold Defendant Bell's arguments. The verdicts against Defendants Rhame, Shaw, and Bell can stand, despite the acquittal of Defendant Keller. Furthermore, the Sixth Circuit case favoring acquittal and relied upon by Defendants, United States v. Fahra, 643 F. App'x 480 (6th Cir. 2016), is distinguishable as the Sixth Circuit appeared to distinguish away the above-stated principle of law (concerning consistent verdicts being unrequired in joint trials for conspiracy) on the ground that the district court's ruling on the Rule 29 motion at trial was deferred and "the jury's decision [was] therefore of no concern or consequence." Id. at 491. However, in the case *sub judice*, the Court did not defer its Rule 29 ruling on the conspiracy count and the jury's verdict is of consequence in consideration of the present renewed Rule 29 motion context.

### d. **Variance**

In his motion for judgment of acquittal, Defendant Bell also asserts that "the evidence and the jury's verdicts, particularly the complete acquittal of

15

Mr. Keller, conclusively demonstrate that a material and prejudicial variance occurred, which requires Mr. Bell's acquittal as to Count 1 and the substantive mail and wire fraud counts."   Doc. No. [566-1], pp. 1–2.   According to Defendant Bell, "Sterling's dissemination of the pre-2011 airport plan information in no way relied on Mr. Keller or Mr. Bell. Thus, it is impossible for Mr. Bell to have joined an overall illegal scheme/conspiracy."   Doc. No. [566-1], p. 29.   Mr. Bell further argues that "the only way the jury could have convicted [him] was to transfer their finding of guilt regarding the content on Sterling's website (i.e., the pre-2011 airport exchange plan and articles, which Mr. Bell had nothing to do with and which were removed before Mr. Bell joined the company). He asserts that the jury essentially expanded liability to Mr. Bell simply because he worked at Sterling at some point, which is improper."   Doc. No. [566-1], p. 30.   Defendant Bell correctly sets forth the law regarding fatal variances as follows:

> "A variance exists when the proof at trial deviates from the allegations in the indictment but the essential elements of the offense are the same." United States v. Peterson, No. 7:07-CR-22-HL, 2008 WL 4831700, at *5 (M.D. Ga. Nov. 3, 2008) (citing United States v. Young, 39 F.3d 1561, 1566 (11th Cir. 1994)). A variance is fatal only if it was material and substantially prejudiced the defendant. Id.

Doc. No. [566-1], p. 27.

"Substantial prejudice is present if 'the proof at trial differed so greatly from the charges that [the defendant] was unfairly surprised and was unable to prepare an adequate defense.'" United States v. Roopnarine, 718 F. App'x 797, 805 (11th Cir. 2017); see also United States v. Lander, 668 F.3d 1289, 1295 (11th Cir. 2012) ("To find substantial prejudice, we have ordinarily considered whether 'the proof at trial differed so greatly from the charges that [defendant] was unfairly surprised and was unable to prepare an adequate defense.'").

In response to Defendant Bell's arguments, the Government cites the case of United States v. Caporale, 806 F.2d 1487, 1499 (11th Cir. 1986) to assert that Defendant Bell fails to establish that a material variance occurred at trial. Doc. No. [580], p. 36. In Caporale, the Eleventh Circuit stated: "even if the evidence arguably establishes multiple conspiracies, there is no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment." 806 F.2d at 1499–500. "In determining whether a reasonable trier of fact could have found a single conspiracy, the courts in this Circuit have looked at three factors: 1) whether a common goal existed, 2) the

17

nature of the scheme, and 3) overlap of participants." Id. at 1500.  In addition, it has been held that if "a defendant's actions facilitated the endeavors of other coconspirators or facilitated the venture as a whole,' then a single conspiracy is shown." United States v. Chandler, 388 F.3d 796, 811 (11th Cir. 2004).

The Government also referenced the fact that the jury received a multiple conspiracies instruction in which the jury was instructed that they had to find one conspiracy and if they found multiple conspiracies, to acquit.  Doc. No. [623], T. p. 175, lines 1–14; see also Doc. No. [510], p. 21.

After review, the Court concludes that there was no material variance in this case and even if one had been shown, Defendants have not established how a material variance affected their substantial rights, as the indictment was sufficient to put the Defendants on notice of the conspiracy crime for which they were charged and convicted and there has been no showing of unfair surprise or inadequate opportunity to prepare a defense. Caporale, 806 F.2d at 1500 ("Even if the evidence did not support the jury's finding of a single conspiracy, thereby creating a material variance between the proof and the indictment, [defendants] must still show that the variance affected their substantial rights."). More specifically, the Court agrees with the Government

that because the jury received a multiple conspiracies instruction, "the jury already made the factual determination that the defendants were part of a single conspiracy." Doc. No. [580], p. 37. It is also presumed that juries follow the instructions given by a district court. See United States v. Mosquera, 886 F.3d 1032, 1042 (11th Cir. 2018) (citations omitted). The Court is also unable to find that the proof at trial deviated from the allegations in the Indictment, as the Court agrees with the Government that the Superseding Indictment alleged the "very conduct that the Government proved at trial," i.e., that Defendants "engaged in a scheme to defraud Iraqi dinar investors." Doc. No. [580], p. 37.

### 2. *False statements charges*

Defendants Rhame and Bell also argue that there was insufficient evidence to support their false statements convictions, 18 U.S.C. § 1001.

"To sustain a conviction for violation of 18 U.S.C. [§] 1001, the government must prove (1) that a statement was made; (2) that it was false; (3) that it was material; (4) that it was made with specific intent; and (5) that it was within the jurisdiction of an agency of the United States." United States v. Boffil-Rivera, 607 F.3d 736, 740 (11th Cir. 2010) (citations and quotations omitted).

19

### a. <u>Rhame</u>

More specifically, Defendant Rhame asserts that "[t]here was zero evidence that Mr. Rhame made a false statement with specific intent, as opposed to being simply wrong or mistaken when asked about matters dating from three, four, or five years previously."  Doc. No. [558-1], p. 15.  Defendant Rhame also asserts that "the case agent who questioned Mr. Rhame chose not to resolve the ambiguities that the case agent had created and chose to ignore the distinctions Mr. Rhame drew between advertising and promoting, and between current practices and past practices."  <u>Id.</u>

In its brief, the Government set forth the evidence that sufficiently established that a reasonable juror could have concluded that Defendant Rhame intentionally lied to the FBI agents.  Doc. No. [580], pp. 32–33.  The Court upholds the Government's argument and recitation of the evidence and finds that there was sufficient evidence for a jury to have found the essential elements of the crime of false statements (as to each particular count alleged against Defendant Rhame) beyond a reasonable doubt.

### b. <u>Bell</u>

Defendant Bell argues that there is insufficient evidence in the record to support a finding beyond a reasonable doubt that he knowingly and willfully lied to the FBI agent on May 28, 2015 and June 3, 2015.  Doc. No. [566-1], p. 1. As to Count 35, Defendant Bell also asserts ambiguity and absence of intent to deceive arguments.  Doc. No. [566-1], pp. 33–39.  Defendant Bell further asserts by example that in speaking with the FBI, he used the term "firewall" in discussing the "guys out there hyping" the dinar.  Doc. No. [566-1], pp. 13–14. Defendant Bell states that he was not asked what he meant by the term "firewall," and FBI Agent Ryskoski testified that he did not know what Mr. Bell meant by the term.  <u>Id.</u> at p. 14 (citing Doc. No. [534], T. pp. 2739, 2744).  "Agent Ryskoski also admitted that none of <u>Merriam Webster's</u> dictionary definitions for the term 'firewall' applied to Mr. Bell's statement."  <u>Id.</u> (citing T. pp. 2741– 44). Defendant Bell also asserts that neither FBI agent, who interviewed him, asked when and how he told Mr. Keller not to direct business to Sterling.  <u>Id.</u> at p. 16.  Defendant Bell further states that "[t]here are a host of reasonable interpretations of what Mr. Bell could have meant by both statements."  <u>Id.</u> at p. 36.  As to Count 36, Defendant Bell asserts that his statement was "undefined

at the time of the interview or otherwise," and the "[h]ow and when . . . was not established."  Doc. No. [566-1], p. 40.  Defendant Bell also asserts an absence of sufficient evidence to establish that he intended to deceive the FBI.  Id.

Defendant Bell cites a number of cases regarding ambiguity; however, the Court will not focus on the cases that involved an ambiguous question which resulted in an ambiguous answer.  Those cases are distinguishable because here, Defendant Bell does not appear to be arguing that there was ambiguity in the FBI's questions, just that the ambiguity was in the responses that he gave (for which the FBI failed to ask follow up questions to determine what particular terms meant).  See generally Doc. No. [559], p. 18.  The Court also notes that Defendant Bell has cited a number of non-binding, out of circuit decisions.  Id. at p. 17.  This Court declines to overturn Defendant Bell's conviction based on non-binding authority.

Ultimately, the Court rules based on a quote from a Second Circuit case cited within the Eleventh Circuit's case of United States v. Manpat, 928 F.2d 1097, 1099 (11th Cir. 1991), from which it appears to this Court that the Eleventh Circuit approves this statement of law.  To this regard, "[a]bsent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness

of [Defendant Bell's] answer was for the jury." <u>United States v. Bonacorsa</u>, 528 F.2d 1218, 1221 (2d Cir. 1976).[15]

Thus, because the jury was entitled to determine the meaning of Defendant Bell's statements, a reasonable jury could have concluded there was sufficient evidence to have found the essential elements of the crime of false statements (as to each particular count alleged against Defendant Bell) beyond a reasonable doubt.[16]

As stated above, Defendant Bell has also filed a Notice of Immateriality of Alleged False Statements.  Doc. No. [615].  In this notice, Defendant Bell asserts that neither of his statements at issue in Counts 35 and 36 "can be material because they could not reasonably have affected any decision by the FBI."  <u>Id.</u> at p. 2.  Defendant Bell further states: "[t]here is no legal requirement

_____

[15] The Court recognizes that the <u>Bonacorsa</u> case involved a perjury prosecution, as opposed to a false statement prosecution, at issue here; however, the reasoning is equally applicable.  See <u>Manapat</u>, 928 F.2d at 1099 (holding that "[t]he reasoning in cases concerning [the perjury statute] is equally applicable to the issue in this case [involving false statements], and we therefore look to those cases to guide our inquiry.").

[16] In its brief, the Government set forth the evidence that sufficiently established that a reasonable juror could have concluded that Defendant Bell intentionally lied to the FBI agents.  Doc. No. [580], pp. 32–34.  The Court adopts the Government's recitation of evidence for purposes of this Order.

that a company like Sterling establish a 'firewall' or that an entity like Mr. Keller's not 'direct' business to or 'promote' one of its advertisers." Id. Defendant Bell further states: "if [he] had provided what the government asserts is the true information, this would not reasonably have spurred any action by the FBI." Id.

As correctly noted by the Government in its brief, to be material, a "statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." Doc. No. [580], p. 12 (citing United States v. Gaudin, 515 U.S. 506, 509 (1995)). "The government is not required to prove that the statement had actual influence. 'The false statement must simply have the capacity to impair or pervert the functioning of a government agency.' The statement does not have to be relied upon and can be material even if it is ignored and never read." United States v. Boffil-Rivera, 607 F.3d 736, 741–42 (11th Cir. 2010) (citations omitted). "It is only the defendant's scienter that is relevant." United States v. White, 765 F.2d 1469, 1482 (11th Cir. 1985).

"[I]n considering materiality this court undertakes a plenary review, for materiality is a question of law."  United States v. White, 765 F.2d 1469, 1473 (11th Cir. 1985).

After review, Defendant Bell's argument fails because for the statements that Defendant Bell made to be material, there does not have to be a legal requirement for Sterling to establish a firewall or for Mr. Keller to not direct business to Sterling.  See generally, United States v. Fern, 696 F.2d 1269, 1274 (11th Cir. 1983) (rejecting argument that a statement was not material because there "was nothing to investigate" and because the law required the tax claim for refund to be in writing).  As stated above, to be material, the false statement must simply have the capacity to impair or pervert the functioning of a government agency.  Here, Defendant Bell's false statements had "the capacity to impair the [FBI's] investigation."  United States v. Marion, 418 F. App'x 847, 850 (11th Cir. 2011)' see also Nelson v. United States, No. 3:10-CR-23-J-32JBT, 2019 WL 1763226, at *5 (M.D. Fla. Apr. 22, 2019) (holding that the "false statement had the capacity to impair or pervert the FBI's criminal investigation.") (quotations omitted).

25

Accordingly, the Court declines to uphold Defendant Bell's immateriality arguments.

In summary, the Court upholds the Government's argument and recitation of the evidence and finds that there was sufficient evidence for a jury to have found the essential elements of the crime of false statements (as to each particular count alleged against Defendant Bell) beyond a reasonable doubt.

## CONCLUSION

For purposes of perfecting the record, the Court notes that its trial rulings on the trial motions for judgment of acquittal (Doc. Nos. [487], [488], and [489]) were as follows:[17]

> As to Mr. Rhame (Doc. No. [488]), the motion was denied as to Counts 1, 3, 4, 31, 32, 33, and 34. The Court took Counts 15, 18, 19, and 21 under advisement.[18]

---

[17] While the transcript shows that the Court initially granted the Defendants' motions for directed verdict on twenty other various counts—after discussion (Doc. No. [541], T. p. 3898), the Court clarified its ruling (Doc. No. [543], T. p. 4165–66) and by separate written order, the Court granted the Government's verbal motion to dismiss Counts 2, 5, 6, 7, 8, 9, 10, 12, 13, 17, 20, 22, 23, 24, 25, 26, 27, 28, 29, and 30 of the Superseding Indictment. Doc. No. [500].

[18] See Trial Transcript, Doc. No. [541-2], T. p. 3896.

As to Mr. Bell (Doc. No. [489]), the motion was denied as to Counts 3, 4, 35 and 36.  The Court took Counts 1, 15, and 18 under advisement.  The next day, the Court denied the motion as to Count 1.[19]

As to Mr. Shaw (Doc. No. [487]), the Court took Counts 1, 15, 18, and 19, 21 under advisement. The motion was denied as to Counts 3 and 4.  The next day, the Court denied the motion as to Count 1.[20]

The Court later denied the motions as to Count 15[21] and reserved ruling as to Counts 18, 19, and 21.[22]

The post-trial *renewed* Motions for Judgment of Acquittal filed by Defendant Tyson Rhame (Doc. No. [558]), Defendant James Shaw (Doc. No. [564]), and Defendant Frank Bell (Doc. No. [566]) are **DENIED**.  As for each count for which Defendants were found guilty in the jury's verdict, after viewing the evidence in the light most favorable to the prosecution, the Court finds that any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

---

[19] Doc. No. [542], T. p. 3952.

[20] Doc. No. [542], T. p. 3952.

[21] Doc. No. [542-2], T. p. 4159, lines 9–12.

[22] Doc. No. [544], T. p. 4558, lines 20–25; and T. p. 4563, lines 15–20.

27

Defendants have also filed motions to adopt each other's motions (Doc. Nos. [489], [568], [569]).  Said adoption motions are **GRANTED**.[23]

**IT IS SO ORDERED** this 25th day of March, 2020.


<u>s/Steve C. Jones</u>
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

---

[23] A ruling on the pending motions for new trial will follow by separate order.  <u>See</u> <u>United States v. Martinez</u>, 763 F.2d 1297, 1312 (11th Cir. 1985) ("a motion for new trial made on the ground that the verdict is contrary to the weight of the evidence raises issues very different from a motion for judgment of acquittal notwithstanding the verdict, which is based on the sufficiency of the evidence.").